UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TINA DICKMANN,

      Plaintiff,

v.                                                 Case No. 8:21-cv-2120-SPF

KILOLO KIJAKAZI,
Commissioner of the Social
Security Administration,

      Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.    Procedural Background**

Plaintiff applied for a period of disability and DIB (Tr. 215-16). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 111-24, 126–39). Plaintiff then requested an administrative hearing (Tr. 171-72). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 32-77). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and denied Plaintiff's claims for benefits (Tr. 12-31). Then Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–6). Plaintiff then timely filed

a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 1968 (Tr. 20), claimed disability beginning July 21, 2018 (Tr. 215). Plaintiff has a college education (Tr. 20) and past relevant work as a bookkeeper, a benefits manager, and an accountant (Tr. 25). Plaintiff alleged disability due to myalgia and myositis, classical migraine, fibromyalgia, rheumatoid arthritis, cervical spine stenosis, insomnia, depression, and osteoarthritis (Tr. 112).

In rendering the administrative decision, the ALJ concluded that Plaintiff meets the insured status requirements through December 31, 2023 and had not engaged in substantial gainful activity since July 21, 2018, her alleged onset date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had these severe impairments: rheumatoid arthritis, osteoarthritis, fibromyalgia, and migraine headaches (*Id.*). Notwithstanding these noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), "except that she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. She can never limb ladders, ropes, or scaffolds. She should avoid concentrated exposure to hazards. She can tolerate no more than moderate levels of noise. She can frequently handle and finger." (Tr. 19). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's

subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 21).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work as a bookkeeper and could perform the composite job of benefits manager and accountant. The ALJ also found that Plaintiff could transfer her skills to work as a tax clerk, invoice control clerk, employment interviewer, and personnel recruiter (Tr. 26). Even if Plaintiff had no transferrable skills from her past work, the ALJ found she could work as a routing clerk or router (*Id.*). Based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (*Id.*).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which will likely result in death, or which has lasted or will likely last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. Review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### IV.     Analysis

Plaintiff argues the ALJ did not properly evaluate her subjective complaints of migraine and fibromyalgia pain (Doc. 14 at 5-8). Within this argument, Plaintiff points out that the ALJ failed to obtain medical evidence from Principal Life Insurance Company related to the long-term disability benefits the insurer awarded her in December 2018 (*Id*. at 7-8). For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

In determining whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms are reasonably consistent with the objective medical evidence and other evidence. 20 C.F.R. §

404.1529(a). Once a claimant establishes that his pain or other subjective symptoms are disabling, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Land v. Comm'r of Soc. Sec.*, 843 F. App'x 153, 155 (11th Cir. 2021) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The Eleventh Circuit has established a three-part "pain standard" for the Commissioner to apply in evaluating a claimant's subjective complaints. The standard requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). If an ALJ rejects a claimant's subjective testimony, she must articulate explicit and adequate reasons for his decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Adjudicators, as the regulations dictate,

6

are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *Id.* The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 404.1529. "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. § 404.1513. Subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

Here, Plaintiff testified she has good days and bad days. On a "migraine-bad day," which she experiences "once or twice a week" (Tr. 49), "I'm vomiting and I'm nauseous and I lay on the floor for anywhere from four to eight hours. On the bathroom floor in front of the toilet." (Tr. 63). On a good day, she can wash dishes and do laundry, "[b]ut that's about it." (Tr. 59). On her few "in between" days – days that are neither good nor bad – she "will go down to the pool . . . and lay in the sun . . . Or I will go to – to Walmart and, you know, maybe do some grocery shopping." (Tr. 63). Then there are her "typical" days, when she wakes up between noon and 1:00 p.m., checks her phone, then moves to the couch where she spends the rest of the day playing games on her iPad, watching TV, and napping (Tr. 57). She testified that family and friends do her household chores, shopping, and cooking, because her rheumatoid arthritis and fibromyalgia cause chronic pain in her hands, wrists, back, feet, neck, and ankles (Tr. 61). She testified, "I want

7

everyone to understand that the pain does not ever, ever go away. I haven't lived a day without pain for 20 years, okay?" (Tr. 65).

The ALJ relied on boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 21). This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, No. 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013), *report and recommendation adopted*, 2013 WL 1694841 (Apr. 18, 2013). Here, the Court finds it is. In evaluating Plaintiff's subjective complaints, the ALJ explained that "while the record supports some level of functional limitation as a result of her impairments, it does not support such disabling limitations as alleged by the claimant." (Tr. 21). The ALJ then noted, "[i]nconsistent reports and testimony from the claimant regarding her activities and pain level, and the fact that the record contains observations of generally **stable** examination findings at her consultative exam, detracts from the consistency of the claimant's statements as to functional limitations and the severity of the alleged symptoms." (Tr. 23). Considering this, the ALJ included in Plaintiff's RFC the limitation that Plaintiff "can tolerate no more than moderate levels of noise." (Tr. 19).

Plaintiff argues the ALJ erred in this analysis because she focused primarily on medical evidence noting Plaintiff's migraines and fibromyalgia were stable, when "the

8

treatment notes consistently identify migraines as a chronic condition." (Doc. 14 at 6). The Commissioner responds that just "because Plaintiff's impairments could have caused her alleged symptoms does not mean that her impairments actually caused the disabling symptoms that she alleged." (*Id*. at 9).  The Commissioner points out that the ALJ considered Plaintiff's statements regarding her subjective symptoms yet found them inconsistent with the objective medical evidence and Plaintiff's daily activities, in accordance with the regulatory scheme (*Id*., citing 20 C.F.R. § 404.1529(c)(2), (3)).

Regarding the medical evidence, the ALJ discussed Plaintiff's treatment for arthritis, fibromyalgia, and osteoarthritis by rheumatologist Tatiana Nagabina, M.D. (Tr. 21-22, 369-441).  June 2017 imaging of Plaintiff's feet showed joint space narrowing in several PIP/DIP joints (the second and third joints that connect the toe to the foot), mild narrowing of the first MTP joints (the first joint that connects the toe to the foot), and questionable erosion at the left metatarsal head (the ball of the foot) (*see* Tr. 408). X-rays of Plaintiff's hands showed mild bony hypertrophy of her PIP/DIP joints (connecting the finger to the hand), mild narrowing of her MCP joints, and mild/moderate narrowing at her first CMC joints (the joint at the base of the thumb) (*Id*.).

At Plaintiff's monthly appointments with Dr. Nagabina in 2018, the doctor found she had mild to moderate soft tissue fullness and tenderness in her wrists, hands, ankles, and feet with multiple trigger points in her elbows, shoulders, hips, knees, trapezius region, upper and lower paraspinal muscles, buttocks, and sacroiliac joints (Tr. 383, 388, 393, 398, 403-04, 408).  Plaintiff had decreased strength in her arthritic joints (*Id*.).  She consistently complained to Dr. Nagabina of worsening pain in her hands, wrists, elbows,

9

shoulders, neck, back, hips, ankles, and feet (Tr. 375-77, 760). Dr. Nagabina prescribed Cimzia, a bi-monthly injection, in March 2018, and continued Plaintiff on Arava and then Enbrel for her rheumatoid arthritis (Tr. 375-77, 381-85). In February 2019, Dr. Nagabina prescribed Plaintiff a short course of Prednisone when Plaintiff said her pain was worsening, followed by Mobic to reduce inflammation (Tr. 375-77). Dr. Nagabina recommended an over-the-counter arthritis ointment (*Id*.).

Meanwhile, Plaintiff also treated with primary care physician Sreelatha Tirupathi, M.D. in 2018 and 2019, who noted numerous times that Plaintiff's migraines and fibromyalgia were stable, and she consistently urged Plaintiff to diet and exercise (Tr. 22, 449-50, 462-63, 732). The ALJ also considered Plaintiff's monthly pain management treatment by Nebil Gerges, D.O. of the Florida Spine Institute from July 2018 through March 2020 (Tr. 22-23). In July 2018, Plaintiff reported pain in her back, neck, arms, right shoulder, hips, legs, and head that was an 8 out of 10 on the pain scale, without medication (Tr. 534-36). She had tenderness, spasm, and reduced range of motion in her cervical, thoracic, and lumbar spine (*Id*.). She also had tenderness and restricted range of motion in her rights shoulder and hips (*Id*.). Dr. Gerges prescribed Skelaxin, Trezix, and Belbuca (although these medications changed during Plaintiff's treatment) and recommended a medial branch block (*Id*.). Plaintiff reported a 40% reduction in pain on medication (Tr. 530). She underwent a cervical medial branch block at C2-C5 on July 31, 2018, which provided her with 80% relief bilaterally (Tr. 529).

Dr. Gerges started Plaintiff on a medication regimen of Hydrocodone-Acetaminophen, cyclobenzaprine, Mobic, and propranolol in October 2018 (Tr. 524-26).

After that, Plaintiff followed up monthly with Dr. Gerges in 2019 and 2020 for prescription refills, with occasional medication and dosage adjustments (*see* Tr. 500-27, 608-39, 831-90). Her exam findings were unchanged: she had reduced range of motion and tenderness in her back, shoulder, and hips. In June 2019, Plaintiff reported that her pain was tolerable with medication. Plaintiff experienced 30% pain relief from a radiofrequency ablation in October 2019 (Tr. 614).

Against this treatment backdrop, the ALJ considered Plaintiff's daily activities. Although Plaintiff testified her pain was disabling, she told her psychiatrist, Syed Zaidi, M.D., in March 2020 that she plays games on her iPad, sits outside by the pool, and visits her granddaughter (Tr. 22, 766). Dr. Zaidi's notes from April 2020 quote Plaintiff as saying, "I keep myself busy by watching TV and doing chores at home. I am painting my room" (Tr. 772). And in May and June 2020, Plaintiff told Dr. Zaidi she cooks, cleans, spends time with family, "take[s] walk[s] and do[es] some exercise." (Tr. 777, 782). In July 2020, Plaintiff reported going to the pool "a couple of times a week. I have been helping one of my friend[s]. I do dishes and light cooking. My mood is quite stable. I am sleeping well. My energy level and motivation is good." (Tr. 787).

As the ALJ noted, however, Plaintiff testified she does not exercise, can only walk for five to seven minutes at a time, can only sit for up to an hour and a half at a time and for up to three hours total in an eight-hour workday (Tr. 20, 42-43). Plaintiff attempted to explain Dr. Zaidi's notes by testifying that the psychiatrist's office told her their definition of "exercise" differed from hers and included getting up from the couch to do dishes (Tr. 65-66). But the ALJ found this testimony unpersuasive (Tr. 20).

At this point in Plaintiff's argument, to rehabilitate her testimony, she emphasizes she has received long-term disability benefits since December 2018 (Doc. 14 at 7-8). Plaintiff contends the ALJ should have asked her at the hearing if there is evidence in her claims file that corroborates her complaints of pain. Specifically, Plaintiff points out that Dr. Gerges completed a Work Status Sheet to Principal Life Insurance Company on September 25, 2020, two months before the ALJ's hearing, at the insurer's request (*Id.*; Tr. 78-79). Plaintiff did not submit Dr. Gerges's form to the ALJ but did present it to the Appeals Council as a part of her request for review (Tr. 78-79). The Appeals Council denied Plaintiff's request and found "this evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2).

Social Security proceedings are inquisitorial rather than adversarial in nature. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). And although the claimant must provide medical evidence showing she is disabled, the ALJ is charged with developing a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). When a plaintiff demonstrates that the record reveals evidentiary gaps which result in unfairness or "clear prejudice," remand is warranted. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995); *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (stating that the claimant must show some prejudice before a court will order a remand to the Commissioner for further development of the record).

Here, Plaintiff does not argue there is an evidentiary gap in the record or that such a gap resulted in clear prejudice to her. Nor does she challenge the Appeals Council's consideration of Dr. Gerges's September 25, 2020 form. Instead, Plaintiff muses that her

then-counsel should have obtained the form from the insurance company and submitted it to the ALJ (Doc. 14 at 7). Because he did not – Plaintiff's argument goes – the burden shifted to the ALJ, who "should have inquired as to whether there was this type of opinion letter completed in connection with the Long-Term disability claim." (Doc. 14 at 7-8). Plaintiff cites no authority for her argument that the ALJ failed to develop the record, and it fails. In any event, Plaintiff failed to show unfairness or clear prejudice warranting remand.

In conclusion, The ALJ articulated explicit and adequate reasons for rejecting Plaintiff's subjective pain testimony, and these reasons are supported by substantial evidence. *See Dyer*, 395 F.3d at 1210. Plaintiff has not shown that the ALJ ran afoul of the Eleventh Circuit's pain standard. *See Holt*, 921 F.2d at 1221. To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, it cannot. When reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if the undersigned would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. In other words, the Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence

preponderates against the ALJ's decision. *Id.* On this record, the ALJ did not err in considering Plaintiff's subjective complaints.

## V. Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

**ORDERED** in Tampa, Florida, on September 13, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE